## Richmond

WILLIAM DON MALPASS v. EDGAR M. MORGAN, JR.

November 27, 1972.

Record No. 7852.

Present, All the Justices.

*Richard S. McLellon (Bangel, Bangel & Bangel,* on brief) for plaintiff in error.

*Robert W. Stewart (Stackhouse, Weinberg & Stewart,* on brief), for defendant in error.

CARRICO, J., delivered the opinion of the court.

Edgar M. Morgan, Jr., filed in the trial court a petition seeking the adoption and change of name of his stepson, then six years of age.

Linda Bloodworth Malpass Morgan, Morgan's wife and the natural mother of the child, joined in the petition to indicate her consent. William Don Malpass, the natural father of the child, was given notice of the petition, and he filed an answer objecting to the adoption. The trial court, after hearing evidence, ruled that the father's consent to the adoption was withheld contrary to the best interests of the child. A final order was entered allowing the adoption, and the father was granted a writ of error.

The sole question to be decided is whether the trial court erred in permitting the adoption in absence of consent by the father.

The evidence showed that William Don Malpass and Linda Bloodworth, then twenty-one and seventeen years of age, respectively, were married on July 1, 1961. They lived together only a short while and separated in October, 1961. The child was born June 21, 1962. Through the wife's efforts, a reconciliation was effected in May, 1963. The couple lived together, with the child in their home, until October, 1963, when a final separation occurred, the child remaining with the mother.

The evidence was in conflict concerning the father's contacts with and support of the child in the months following the final separation of the parents. The mother testified that the father sought to see the child only occasionally and failed to provide support. The father claimed that he did provide support, although admittedly falling behind at times, and that he was thwarted by the mother in his efforts to see the child. In any event, the mother had to go to court to secure support for the child, which she claimed even then was unsatisfactory, and the father had to resort to the same means to secure visitation rights.

Meanwhile, a strong attachment had developed between the father's parents and the child. He visited them often in their home in Virginia Beach, frequently staying overnight, and he accompanied them on trips. They remembered him with gifts on special occasions, contributed to a savings account for his benefit, purchased savings bonds in his and their names, and provided for trust funds in his favor in their wills.

The marriage of the child's parents formally ended in April, 1965, when the mother was awarded an absolute divorce from the father on the grounds of "cruelty tantamount to desertion." Pursuant to a stipulation entered into by the parties and approved by the court,

the mother was awarded custody of the child with fixed visitation rights allowed the father.

The father remarried in May, 1965, and moved with his new wife to Ohio. He returned to Virginia twice each year, in the spring and fall, and visited the child. He and his second wife now have a son of their own, and a daughter by the wife's former marriage also lives in their household.

The mother married Morgan, the present petitioner, in November, 1966. They established a home, where the child has since resided, in the Tidewater area of Virginia. An adopted daughter completes the Morgan family.

Following the mother's remarriage, the relationship between the paternal grandparents and the child continued for some time. However, a disagreement between the grandparents and the Morgans, resulting from the enrollment of the child in school under the name of Morgan, caused the mother to end the child's visits with the grandparents.

Morgan's petition to adopt the child was filed in November, 1968. The father was given notice in April, 1969, of the filing of the petition, and he then moved back to Virginia to contest the adoption.

Following his return to Virginia, the father exercised the full visitation rights afforded him by the divorce decree of April, 1965. Those rights were to have the child in his custody between 8:00 a.m. and 5:30 p.m. one day each weekend and to visit the child in the mother's home two days per week.

In resolving the question before us, it is unnecessary to recite the attributes of Morgan, the present petitioner for adoption, which qualify him as a fit parent. Neither is it necessary to detail the qualities of the mother, exemplified by her efforts to care for the child while completing her education and engaging in gainful employment following her separation from the father, which attest her character. Suffice to say, the record shows that the child justifiably looks upon Morgan as his father and that the lad is being reared "in a warm and loving home."

It is likewise unnecessary to dissect the character of the father. The trial court noted, in a written opinion, that the homes of both Morgan and the father would furnish "a proper atmosphere in which children could be raised by parents of moral fiber." And the court made the specific finding that the father had not been "guilty of any conduct which would require forfeiture of his parental rights." Mor-

gan does not contest that finding or otherwise claim that the father is an unfit parent.

So we focus upon the basis of the trial court's ruling that the father had withheld his consent to the adoption contrary to the best interests of the child. In reaching its decision, the court adopted the concept that there were "too many fathers" in the child's life, a situation characterized by the court to be "as great a source of potential trouble" as no father at all.

The concept adopted by the trial court stemmed from the fact that when the father returned to Virginia and began to exercise the full visitation rights afforded him by the divorce decree, friction developed between him and the Morgans as a result. They objected to his insistence upon rigid adherence to the visitation schedule set up by the decree and to his permitting the child to visit the paternal grandparents on the one day each weekend he had custody of the child.

The trial court found that the visitation schedule, in addition to creating friction between the father and the Morgans, had "precipitated some reaction on the part of the child." The court further found that adherence "to a rigid weekend schedule is most likely to be the source of further irritation as the child grows older and develops a broader scope of interests." All this, the trial court concluded, required the holding that the child must "be allowed to become a fully qualified member of his mother's family," thereby necessitating severance of the father's rights.

The question thus becomes whether the evidence, when considered in light of the adoption statutes, is sufficient to support the trial court's conclusion. Code § 63.1-225, the statute relating to consent in adoption cases, was worded, before its amendment in 1972, as follows:

"§ 63.1-225. **Parental, etc., consent.**—No petition for adoption shall be granted, except as hereinafter provided in this section, unless there be written consent to the proposed adoption filed with the petition. Such consent shall be signed and acknowledged before an officer authorized by law to take acknowledgments.

"The consent of a parent for the adoption of his or her child shall not be valid unless the child be at least ten days old at the time the consent is signed.

"A parent who has not reached the age of twenty-one shall have legal capacity to give consent to adoption and shall be as fully

bound thereby as if said parent had attained the age of twenty-one years.

"Consent by the child shall be necessary if the child is fourteen years of age or older, unless the court finds that the best interests of the child will be served by not requiring such consent.

"Consent shall be executed:

"(1) By the parents or surviving parent of a child born in wedlock; provided, however, if the parents are divorced and one has been divested of custody by terms of the divorce and does not consent to the adoption the petition may be granted without the consent of such parent; or

"(2) By the mother of a child born out of wedlock. The consent of the father of a child born to an unmarried woman shall not be required unless such child becomes legitimate prior to the filing of the petition for adoption; or

"(3) By the child placing agency or the local board of public welfare having custody of the child, with right to place him for adoption, through court commitment or paternal agreement as provided in § 63.1-56 or § 63.1-204 of the Code; or an agency outside the State which is licensed or otherwise duly authorized to place children for adoption by virtue of the laws under which it operates; or

"(4) If after hearing evidence the court finds that the consent of any person or agency whose consent is hereinabove required is withheld contrary to the best interests of the child, or if a valid consent is unobtainable, the court may grant the petition without such consent.

"If the child is not in the custody of a child placing agency and both parents are deceased, the court, after hearing evidence to that effect, may grant the petition without the filing of any consent."

Thus, it is seen that consent is required in every possible situation in which a child might find himself except, and here we rearrange the order of exceptions, (1) where a child born out of wedlock has not been legitimatized, in which case the consent of the father is not required; (2) where both parents are deceased and the child is not in the custody of a child placing agency, in which case the adoption may be allowed without any consent; (3) where the parents are divorced and one has been divested of custody by terms of the divorce and does not consent, in which case the adoption may be

permitted without the consent of such parent; or (4) where, after hearing evidence, the court finds that the required consent is withheld contrary to the best interests of the child, or is unavailable, in which case the adoption may be granted without such consent.

Exceptions 1 and 2, listed in the paragraph next preceding, obviously are not applicable here. Neither is exception 3. Although the trial court mentioned exception 3 in its written opinion, it did not hold, and properly so, that the father had been divested of custody by the divorce decree involved in this case. Reference to exception 3 is important only to point out that consent of a divorced parent not divested of custody is required unless exception 4 is applicable.

■ This brings us to exception 4 and to consideration of what must be shown before a court may hold that the consent of a parent is withheld contrary to the best interests of a child. Morgan argues that because the trial court found that the best interests of the child would be promoted by the adoption, it automatically followed that the court should conclude that the consent of the father was withheld contrary to the best interests of the child.

We do not believe this conclusion does necessarily follow. Under Code §§ 63.1-226 and -230, relating, respectively, to the entry of interlocutory and final orders of adoption, the court must, in every case as prerequisite to granting adoption and aside from considerations of consent, find that the best interests of the child will be promoted or served thereby. If such a finding of promotion is all that is required in order for the court further to determine that consent is withheld contrary to the best interests of the child, it was a useless task for the General Assembly to set up, as it did in § 63.1-225, the elaborate requirements for consent in the many possible situations in which a child might find himself. If Morgan's argument is sound, everything in § 63.1-225 but for exception 4 would have been unnecessary, and the effect would have been to permit a court to dispense with consent in all cases in which it found that adoption would promote the best interests of a child. We do not think the General Assembly intended that result.

The different language employed in §§ 63.1-226 and -230 on the one hand and in exception 4 of § 63.1-225 on the other lends support to this view. To promote the best interests of a child is to advance or to contribute to his interest. It would, in many cases, take but little evidence to show that a child's interests would be promoted by adoption. But to say that a certain action is contrary to the best interests of a child means that it is action opposed to his interests.

When consent to adoption is withheld contrary to a child's best interests, it means that the person so withholding is "obstinately self-willed in refusing to concur" and that he is acting prejudicially to the child's interests. *See Webster's Third New Internatioanl Dictionary*, p. 495, column 3. To demonstrate this would take, it appears to us, evidence of a stronger character.

So we think something more is required to support a finding that consent is withheld contrary to the best interests of a child. What that something more is, we have not previously defined. We have applied exception 4 of § 63.1-225 in only one other case, *Dyer* v. *Howell*, 212 Va. 453, 458-59, 184 S.E.2d 789, 793-94 (1971). There, a maternal aunt and uncle sought to adopt their niece, over objection of the child's natural father. The trial court allowed the adoption. In affirming, we found it unnecessary to lay down a test for determining the sufficiency of evidence to show when consent is contrarily withheld because the evidence there would have been sufficient by any test. We found the child there involved "desperately" in need of the security and stability which she could receive only in the adoptive home.

We do not intend to intimate that a child must be in a desperate situation before adoption may be ordered over the objection of a natural parent. And we agree with Morgan that it was not necessary to show in this case that the father had abandoned the child or was an unfit parent. But, considering the finality of adoption as it affects the non-consenting parent, we think something more is required than a mere showing of friction between the contesting adults and of "some reaction" on the part of the child.

Where, as here, there is no question of the fitness of the non-consenting parent and he has not by conduct or previous legal action lost his rights to the child, it must be shown that continuance of the relationship between the two would be detrimental to the child's welfare. This was not sufficiently shown in the case before us, and thus it was error for the trial court to grant the adoption without the father's consent.

We have established the rule in Virginia that in custody and adoption cases the welfare of the child is of paramount concern and takes precedence over the rights of parents. *Doulgeris* v. *Bambacus, Adm'r*, 203 Va. 670, 674, 127 S.E.2d 145, 149 (1962); *Mullen* v. *Mullen*, 188 Va. 259, 269, 49 S.E.2d 349, 354 (1948). There is, however, a condition to the rule in custody cases where the contest is between parent and non-parent, and we believe the condition should

apply equally in adoption cases. The condition is that the rights of parents may not be lightly severed but are to be respected if at all consonant with the best interests of the child. *Walker* v. *Brooks*, 203 Va. 417, 421, 124 S.E.2d 195, 198 (1962).

The order of the trial court granting the adoption will be reversed and the petition for adoption dismissed.

*Reversed and dismissed.*