## Richmond

ROLAND DAVID CUNNINGHAM, JR.

V.

ROSALIND M. GRAY AND CHARLES M. GRAY

January 16, 1981.

Record No. 781787.

Present: All the Justices.

*William W. Muse* (*Blanton and Muse,* on brief), for appellant.
*H. Franklin Taylor, III,* for appellees.

COMPTON, J., delivered the opinion of the Court.

In this family law case, we review the trial court's action in granting a stepfather's petition for adoption over objection of the child's natural father.

In April of 1978, appellees Rosalind M. Gray and Charles M. Gray filed a petition in the court below for the adoption by Mr. Gray of Tracy Michelle Cunningham and for change of her name. The child was nine years of age and the natural daughter of Mrs. Gray by her former marriage to appellant Roland David Cunningham, Jr. After the appropriate investigation and a hearing upon the natural father's objection to the proposed adoption, the trial court found that the Grays had proved by clear and convincing evidence the adoption was in the best interests of the child and that consent of the natural father was withheld contrary to those interests. Accordingly, the court below granted the adoption and change of name by order entered in September of 1978, from which we awarded the natural father an appeal.

The evidence shows the Cunninghams were married in New Jersey in 1968. The child was born the following year. The parties separated in 1971 when Cunningham went to live with his parents. The marriage was terminated in 1972 by a New Jersey divorce decree. Custody of the child was awarded the mother and Cunningham was granted reasonable rights of visitation. He was ordered to pay $15 per week as child support.

The mother testified she remained in New Jersey until 1973 when she moved to Richmond. During the marriage, according to the mother, Cunningham was unable to hold any job for more than four months; he worked for awhile as a deliveryman and in a department store. After the separation and before the mother left New Jersey, Cunningham was not employed and paid no child support. During that period of approximately two and one-half years, Cunningham saw the child about 10 times, frequently failing to appear for pre-arranged visitation.

The mother moved from New Jersey accompanied by the child without notifying the father because, she said, he was occasionally violent, upsetting the child. Cunningham made no child support payments after the mother and child moved to Richmond. According to the father's testimony, an attorney in New Jersey told him that such payments were no longer required when the child was taken from the jurisdiction. Cunningham testified he had since learned that advice was erroneous and asked the court below to determine the arrearage in support payments so that he could "become current" with his support obligations.

The evidence showed Cunningham had been convicted in 1977 of trespassing and served 40 days in jail. At the time of the hearing he was unemployed.

The evidence was in conflict about the extent of Cunningham's interest in his daughter after the mother moved with her to Richmond. Cunningham, who had not remarried and still lived with his parents in New Jersey, presented evidence that, while permitting annual visits by the child's paternal grandmother, the natural mother frustrated the father's several efforts to talk with his daughter by telephone, to see her in person in Richmond, and to present her with occasional gifts. The mother denied she prevented Cunningham from contacting the child. She added the child was "well aware" that she had a living natural father and said that the child has a scrapbook containing pictures of Cunningham. The evidence was undisputed that Cunningham had actually seen the child only once since 1973.

The mother married Gray, an employee of the federal government, in 1976 when both were approximately 30 years of age. The evidence showed the child has an excellent relationship with the stepfather.

According to the applicable statute, a petition for adoption under the circumstances of this case may be granted without the father's consent if the trial court finds such consent "is withheld contrary to

the best interests of the child." Code § 63.1-225(C). The sole question here is whether the court below correctly decided the adoptive parents had carried their statutory burden of showing that in withholding consent Cunningham was acting prejudicially to the child's interests. *See Malpass* v. *Morgan,* 213 Va. 393, 399, 192 S.E.2d 794, 798-99 (1972).

The Grays argue the trial court properly ordered the adoption. They say the evidence shows Cunningham had actually abandoned the child and thus sacrificed his parental rights to her. We disagree.

■ Our determination is controlled by *Ward* v. *Faw,* 219 Va. 1120, 253 S.E.2d 658 (1979), a case decided subsequent to the trial court's ruling in the present matter. Upon very similar facts, we said, relying on *Malpass,* that under the circumstances in *Ward,* the adoptive parents must show that continuance of the relationship between the natural father and child would be detrimental to the child's welfare. 219 Va. at 1124, 253 S.E.2d at 661. We reiterated that while the welfare of the child is of paramount concern in adoption cases, nonetheless the rights of a natural parent vis-a-vis a non-parent will be maintained if at all consistent with the child's best interests. *Id.* And we pointed out in *Ward* that the "relationship" to be examined between non-consenting parent and child includes not only "a social, familial, or custodial connection" but also "the legal affiliation always present between parent and child." 219 Va. at 1125, 253 S.E.2d at 662.

■ The record here, as in *Ward,* is completely devoid of any evidence that continuation of the present limited relationship between Cunningham and his daughter, or any broadening of that relationship which may occur in the future, will be disruptive of the child's well-being. The evidence shows that friction exists between the natural parents, that in the past the father's occasional violence toward the mother upset the child, that the father has a poor employment record, and that he has been convicted of a minor crime. But there is no evidence which supports a finding that those negative factors will have a definitive adverse effect on the child's welfare if the father-daughter relationship is continued.

And we reject the adoptive parents' argument that Cunningham's total conduct during his marriage, after the separation, and subsequent to the divorce "has been tantamount to abandonment of his interest in the child." While his actions during the whole period have been in derogation of his parental duties, we cannot say in this case that such conduct has amounted to permanent forfeiture

of his parental rights. Moreover, there is no indication in the record that the father's objection to the adoption is motivated by any factor except a sincere desire to maintain a parent-child connection with his daughter. Indeed, he has asked the adoption court not only to assess against him the arrearage in support payments but also to establish specific visitation privileges.

For these reasons, we think the evidence was insufficient as a matter of law to support the adoption. Thus, the order appealed from will be reversed and the petition for adoption and change of name will be dismissed, without prejudice to the right of either natural parent to seek in the proper forum adjudication of issues relating to child support and visitation.

*Reversed and dismissed.*