## Richmond

JAMES ALLEN JOLLIFF

v.

JIMMY JOE CRABTREE

January 21, 1983.

Record No. 801099.

Present: All the Justices.

*Gordon P. Peyton* for appellant.
*Michael P. Valois (Garrett and Valois, P.C.,* on brief), for appellee.

THOMPSON, J., delivered the opinion of the Court.

In this appeal, we must decide if the trial court correctly held that consent to adoption by a stepfather was withheld by the natural father contrary to the best interests of the child.*

The natural parents were married in 1968. The child, Christopher Lee Jolliff, was born June 22, 1969, and lived with his parents in Marion, Indiana, until November, 1970. Because of marital discord, the wife and child left the family home and went to live with her mother in the same area. In February, 1971, an Indiana court granted the wife a divorce, custody of the child, and $15 per week child support. It also granted the husband visitation with the child every Sunday.

In April, 1971, the wife and the child left Indiana and moved to Florida without any notice or prior consultation with the child's father. On April 2, 1971, the Indiana court suspended the support payments pending the return of the minor child. Later in 1971, the father visited his former wife and his child briefly in Florida, but has not seen his son since that time.

---

* Code § 63.1-225(C) states, in pertinent part, that "[i]f after hearing evidence the court finds that the valid consent of any person . . . whose consent is . . . required is withheld contrary to the best interests of the child . . . , the court may grant the petition without such consent:"

On December 18, 1972, the mother married Crabtree, a career Navy musician, and the child has lived in the same household with his mother and her husband since that time. They lived first in Pensacola, Florida, then in San Francisco, California, later in the Philippine Islands, and presently live in Prince William County, Virginia, while Crabtree is stationed at the Washington Navy Yard. Meanwhile, the father moved to southern California and remarried. At the time of this proceeding, he had been residing there for six years.

In 1978, Crabtree filed the adoption petition, and the child's mother filed a written consent. The father filed an answer to the petition in which he refused to consent to the adoption and further alleged that it had been impossible for him to exercise visitation rights since he did not know the location of his child until the adoption petition was filed.

An evidentiary hearing was held on November 26, 1979, at which the mother, stepfather, and father all appeared and testified. Testimony revealed a close personal relationship between the child, his mother, and his stepfather; Christopher refers to his stepfather as "Daddy" and has been supported by him as a member of the household as long as he can remember; and Christopher is not personally acquainted with his natural father. Testimony also disclosed that the adoption proceeding was initiated at the suggestion of Christopher who did not understand why his surname was different from that of his mother and "daddy."

The natural father testified that he had not known his son's location until receiving process in the present proceeding; and that he loved his son and wished an opportunity to get know him better, but could not because of the migratory lifestyle of all parties involved. He was willing to support his son, but did not wish to disturb the present custody arrangements. He also stated that he hoped reasonable visitation privileges could be extended to him.

The natural father argues that this case is controlled by our holdings in *Cunningham* v. *Gray*, 221 Va. 792, 273 S.E.2d 562 (1981), *Ward* v. *Faw*, 219 Va. 1120, 253 S.E.2d 658 (1979), and *Malpass* v. *Morgan*, 213 Va. 393, 192 S.E.2d 794 (1972). We agree and reverse the decree of the trial court.

In *Malpass*, we said "when consent to adoption is withheld contrary to a child's best interests, it means that the person so withholding is 'obstinately self-willed in refusing to concur' and that

he is acting prejudicially to the child's interests." 213 Va. at 399, 192 S.E.2d at 798. These characteristics are not present here.

In *Ward* v. *Faw, supra*, the natural father had been in the military service, having recently completed a foreign tour of duty, and the trial court was of opinion that the child and his natural father were strangers, although the father had supported the child, had tried to correspond with him, and had made gifts. The trial court granted the adoption over the objection of the natural father, and we reversed, underscoring what we had said in *Malpass* that "the burden was on the adoptive parent to establish by the evidence that continuance of the relationship between the father and child would be detrimental to the child's welfare." 219 Va. at 1125, 253 S.E.2d at 661. We further said that "[t]he 'relationship' . . . is not limited to a social, familial, or custodial connection which may exist between the child and the non-consenting parent. Consideration should also be given to the legal affiliation always present between parent and child." *Id.* at 1125, 253 S,E.2d at 662.

In *Cunningham* v. *Gray*, 221 Va. at 795, 273 S.E.2d at 564, we said:

> The record here, as in *Ward*, is completely devoid of any evidence that continuance of the present limited relationship between Cunningham and his daughter, or any broadening of that relationship which may occur in the future, will be disruptive of the child's well-being.

In this case, the trial court had before it our opinion in *Ward*, but contended that it was inapplicable since there was "no relationship" between the father and child. This overlooked our statement about the legal affiliation spelled out there and repeated in *Cunningham*.

It is true that prior to the hearing the father had not seen his son for eight years and had not contributed financially to his support. But he was not solely responsible for that state of affairs. His right of visitation abruptly was terminated unilaterally by the mother when she took the child from Indiana, concealing his whereabouts from the father. Apparently, she thought that if no claim for financial support was made this would eliminate the rights of the father.

Whatever dereliction and lack of solicitude may be attributed to the natural father, under these facts he is entitled to continue his legal affiliation with his son because there is no evidence that continuance or broadening of that relationship will be detrimental to the child's welfare. Deprivation of a permanent legal relationship " 'may not be lightly severed but [is] to be respected if at all consonant with the best interests of the child.' " *Ward* v. *Faw*, 219 Va. at 1124, 253 S.E.2d at 661, quoting *Malpass* v. *Morgan*, 213 Va. at 400, 192 S.E.2d at 799. The result of this "proceeding was permanently to deprive a legitimate parent of all that parenthood implies." *Armstrong* v. *Manzo*, 380 U.S. 545, 550 (1965).

For these reasons, the decree of the trial court will be reversed and the petition for adoption dismissed.

*Reversed and dismissed.*

CARRICO, C.J., dissenting.

I would affirm the trial court's order of adoption. The majority opinion states that *Malpass, Ward,* and *Cunningham* control the decision in this case. I disagree. There is present here a factor missing in those cases: the child's stated and obviously sincere desire to be adopted by his stepfather. This factor and the natural father's substantial "dereliction and lack of solicitude" combine, in my view, to distinguish this case from *Malpass, Ward,* and *Cunningham* and to dictate a different result.