## CIRCUIT COURT OF FREDERICK COUNTY

In re Adoption of Anglin, an Infant

March 3, 1987

Case No. (Chancery) C-86-117

### By JUDGE ROBERT K. WOLTZ

This is a contested adoption proceeding. The natural mother of the child and her present husband seek his adoption by the husband and change of his name. After due notice, the respondent natural father signified intention to contest the adoption. Though he filed no responsive pleading he appeared *pro se* at the *ore tenus* hearing on the petition.

The petitioning mother, with whom the child has always resided, and the respondent were married September 25, 1981. Their only child was born November 3, 1981. The parents separated and then entered into a separation agreement, both in October, 1982. The agreement gave custody to the mother, granted "the most liberal visitation" on twenty-four hours' notice to the respondent, and provided for payment by him of child support of $35 a week and payment of medical and dental expenses not covered by insurance.

Relatively soon thereafter the mother, who was living in this area, commenced reciprocal non-support proceedings against the respondent at their former place of residence, Preston County, West Virginia, about 125 miles distant. As appears from an order of the Court there, in March, 1983, the respondent appeared and advised that Court that he "questioned whether he was the father of the infant child" for whom support was sought. As appears from the order the matter was re-scheduled, but just before the new date the respondent withdrew his claim concerning paternity and agreed to an order for weekly child support of $25.

In March, 1984, on non-resident process the mother obtained a no-fault divorce from the father, who made no appearance. The decree granted her sole custody and made no provision for visitation or child support. She married the male petitioner in August, 1984. She and the child had already lived with him for about a year, and she was acquainted with him for a year previous to that.

The petitioners' evidence discloses they own a modest modern home and have a good joint income, that the child, now sixty-four months old, is well and that a close and affectionate relationship exists between the male petitioner and the child. As to the respondent, the mother's testimony was that birth expenses not covered by her employer's insurance were paid by her; since their separation, when the child was about eleven months old, the respondent has paid no support for him despite the separation agreement and court order; that the respondent last visited the child when he was sixteen months old and since his first birthday had not sent him presents, cards or other messages for Christmas and other special occasions; and the last time he requested to see the child was just before the second birthday, and he was refused because of his intoxicated state. The respondent neither testified nor called witnesses but did represent that he had been living in Frederick County for the last year and had lived here previously for about a half year. Whatever he may have before, the father has paid no support for the last fifty-three months despite the private agreement and the court order to do so.

*Ward* v. *Faw*, 219 Va. 1120 (1979), requires broad study of the "parent-child connection" to determine if parental consent to adoption "is withheld contrary to the best interests of the child." The paramount consideration is the child's welfare and best interests; this consideration is more important then the rights of the parent, but those rights must be respected "if at all consonant with the best interests of the child." *Malpass* v. *Morgan*, 213 Va. 393, 399 (1972). Adoption of a child of a living parent is because of its finality a dread thing. The ties of blood relationship and the legal incidents springing from it are rightfully not cut off against the wish of the parent except in extraordinary circumstances. *Id.*

Examining the connection of the respondent with the child in this case there is of necessity "the legal affiliation," *Faw* at 1125, stemming from the biological relationship. For over four years of this child's slightly more than five-year life no other paternal connection with him has existed, neither social, familial, custodial nor financial.

The child spent less than the first year of his life with his natural father and been seen by him almost none since then. The child has lived more than one-half of his life in a family situation with the male petitioner and had a relationship with him even before that. This petitioner has been giving the child financial support, protection, nurture, guidance, training and affection for an extended period of time. During that time the natural parent without justifiable excuse has given none of these.

The respondent suffers from the "beget and forget" syndrome, an affliction of some fathers since earliest times. He paid for none of the birthing expenses of the child. It is questionable how much, if any, support he contributed to the child for the less than one year in which he lived with him and the mother. Since that time he has paid not a penny of support, has sent no gift nor so much as a greeting card and substantially has ignored the child's existence except for a visitation four years ago. By his conduct he has abandoned the child. Nevertheless he wishes to obstruct the child's adoption by that person who for most of the infant's life has willingly supplied him with all those needful things which the respondent by his own default has neglected to supply.

In final argument the respondent said he loved the child and did not want his name changed. Whatever that love, for most of the child's life there has been virtually no outward manifestation of it. His unjustified extended failure to perform his paternal duties undercuts his right to object to the adoption and change of name. This is especially so as heretofore he was willing to question and cast aside his paternity to escape obligation to support the very child whose adoption and change of name he now opposes.

The natural father has introduced no evidence and made no satisfactory argument to show why his "legal

affiliation" or other relationship with the child should continue. By proving the father's actions, the petitioners have borne the burden to show (1) continuation of the relationship (if one exists other than of blood and by law) between him and the child would be detrimental to the child's welfare, *Doe* v. *Doe*, 222 Va. 736 (1981), and *Cunningham* v. *Gray*, 221 Va. 792 (1981); and (2) termination of the legal affiliation of the child with the father is in the child's best interest, *Jolliff* v. *Crabtree*, 224 Va. 654 (1984). Based on the evidence the consent of the respondent to the adoption "is withheld contrary to the best interests of the child." § 63.1-225, *Malpass*, at 399. Further based on the evidence and on the social services report, "the best interests of the child will be served" by the adoption. § 63.1-230, *Malpass*, 398.

It being proper to do so, the probationary period and interlocutory order may be omitted, a final order of adoption and change of name based on hearing *ore tenus* and in accordance with the reasons set forth in this opinion will enter, which order shall specifically make the two statutory findings mentioned above.