## CIRCUIT COURT OF SPOTSYLVANIA COUNTY

In re Adoption of
Stephen John Morton, Jr.,
and Shavone Arsheen Morton

November 22, 1991

**By JUDGE WILLIAM H. LEDBETTER, JR.**

This is an adoption proceeding instituted by paternal grandparents who have had custody of the children for eight years. The father has consented in writing; the mother, Shermone A. Richmond, objects to the adoption.

The petitioners, William Joseph Morton and Myra S. Morton, live in Spotsylvania County. The children, Stephen John Morton, Jr., age 11, and Shavone Arsheen Morton, age 10, have lived with Mr. and Mrs. Morton since 1982, when their father was incarcerated for attempting to murder their mother and the mother was unable to provide for them.

After the petition was filed, the court referred the matter to the Spotsylvania County Department of Social Services for investigation and report. When the investigating social worker contacted Mrs. Richmond, she made known her objection to the adoption. She retained counsel to assist her in opposing the adoption and requested a hearing. The court heard the evidence ore tenus on October 29, 1991, and took the matter under advisement. Counsel filed memoranda in support of their respective positions.

First, Mrs. Richmond asks the court to vacate the custody order of August 23, 1983, wherein the Spotsylvania County Juvenile and Domestic Relations District Court awarded custody of the children to Mr. and Mrs. Morton. She contends that the order is void *ab initio* because

the record does not disclose that she was given proper notice of the custody hearing.

In support of her contention, Mrs. Richmond presented the original juvenile court files. The court files contain very few papers, except the petitions and orders, and provide no evidence of service upon Mrs. Richmond.

Acceptance of Mrs. Richmond's position would be tantamount to holding that orders of the juvenile court, no matter how old, are void unless the court records clearly indicate that all interested parties were given proper notice of the proceeding or voluntarily submitted to the authority of the court. Such a holding would seriously impair the integrity of decisions of courts not of record. Because these courts are not courts of record, their business is conducted by use of forms and other preprinted media. Their proceedings are not recorded and their record-keeping mechanisms are not designed to be all-encompassing. The recognized rule is that judicial proceedings are presumed valid, not void, if the judgment is that of a court of general jurisdiction, or, if that of an inferior court, the court had jurisdiction over the subject matter. In a collateral attack on a judgment, the burden is on the person assailing the judgment to show want of jurisdiction over the parties. Therefore, the court rejects the argument.

Further, Mrs. Richmond acknowledges that she did, in fact, receive notice of the proceeding. The notice, according to her testimony, was in the form of a letter through regular mail from the clerk of the juvenile court. She concedes that she received it prior to the hearing date but does not recall the exact date of receipt. She did not contact the juvenile court clerk's office or Mr. and Mrs. Morton and made no inquiry about the proceeding. Instead, she did nothing, fully aware that Mr. and Mrs. Morton, who had had the children in their care for almost a year at that point, were seeking custody of them. For eight years she has done nothing, has lodged no protest with anyone, and has filed no motions or other papers in any court. In fact, her motion to vacate the custody order made in this proceeding appears to be the first time she has ever complained about the custody arrangement of her children, and it is obvious that her motion here

is for the purpose of enhancing her opposition to the adoption.

Under these circumstances, the court does not find that the juvenile court lacked jurisdiction to award custody of the children to Mr. and Mrs. Morton on August 23, 1983, and denies Mrs. Richmond's motion to vacate that order.

Adoptions are governed by statute. In adoption proceedings in Virginia, consent of the natural parents is required in all but a few specified circumstances. Pertinent to this case, consent of the natural parents is not required if the court finds that such consent "is withheld contrary to the best interests of the child . . . ." Virginia Code Section 63.1-225(D). The decisional law holds that in order to establish that consent has been withheld contrary to the child's best interest, it must appear, by clear and convincing proof, that the adoption is in the child's best interest and that it would be detrimental to continue the natural parent-child relationship. *Malpass v. Morgan*, 213 Va. 393 (1972); *Robinette v. Keene*, 2 Va. App. 578 (1986).

Although many details of this case are disputed, the basic facts are not. The children came to live with Mr. and Mrs. Morton, their paternal grandparents, in 1981, shortly after their father assaulted and attempted to murder their mother. Their father was convicted and incarcerated. He remained in prison during most of the 1980's. Their mother divorced their father, continued to live in the Maryland suburbs of the District of Columbia, and saw the children sporadically. The mother was well aware that Mr. and Mrs. Morton were caring for the children. She knew where they lived and how to get in touch with them. Mr. and Mrs. Morton never exhibited any animosity toward the mother, never "hid" the children from her, and never denied her the privilege of visiting with them. (Most if not all of the visitations took place in Maryland, at the Mortons' second home, when they went there to visit the father in prison.) The mother has recently remarried -- hence, her name, Mrs. Richmond -- and she is regularly employed with the Defense Mapping Agency. Her husband is in the U.S. Army, currently stationed in North Carolina. Her parents, who testified that they too have visited with the children lately, live near Mrs. Richmond.

There is no doubt that Mr. and Mrs. Morton are and have been excellent custodians of their grandchildren. Their motivation is the best interest of the children, whom they have cared for since infancy and with whom they obviously have a loving relationship. On the evidence presented, there is no question but that the children should remain in the custody of Mr. and Mrs. Morton. If this were a custody case, even though it would involved nonparents versus the natural mother, Mr. and Mrs. Morton would surely prevail.

Adoptions, however, are another matter. In an adoption, unlike a custody proceeding, the court does not retain jurisdiction to modify or alter its order which future developments prove to have been ill-advised or if circumstances change significantly. An adoption is final, divesting the natural parent forever of all legal rights and obligations, and severing the parent-child relationship for all purposes recognized by law. Thus, courts are urged to exercise great caution when considering an adoption over the objection of a natural parent.

Mrs. Morton's primary concern, and admittedly the moving force behind this petition, is the future financial well-being of the children. In her testimony, Mrs. Morton emphasized that an adoption would qualify the children for death benefits under her Virginia Supplemental Retirement plan and for any Social Security Benefits deriving from their relationship to the Mortons.

This objective is admirable and understandable, especially in light of the age of the petitioners, who are the children's caretakers, and the demonstrated failure of either natural parent to contribute to the children's financial well-being.

However, on balance, the court concludes that this benevolent concern, as commendable as it is, is not enough to sever the children's legal ties with their natural mother. This decision is controlled by a line of Virginia cases, including *Jolliff v. Crabtree*, 224 Va. 654 (1983); *Cunningham v. Gray*, 221 Va. 792 (1981); *Ward v. Faw*, 219 Va. 2210 (1979); *Malpass, supra.* In those few cases in which non-consensual adoptions have been upheld, the appellate courts have emphasized that a continuing relationship between the non-consenting parent and the child would be detrimental to the child, based on evidence of prior

misconduct, abuse, gross neglect, or the like. *See, e.g., Frye v. Spotte,* 4 Va. App. 530 (1987).

In this case, there has been no showing that the children's continued relationship with Mrs. Richmond would be detrimental or prejudicial to them. Although she has shown only periodic interest in the children until recently and has provided no financial support, it cannot be said that Mrs. Richmond poses any threat or danger to them or that a mother-child relationship between her and the children would be detrimental to the children's best interests.

For the reasons explained, the adoption will be denied and the petition dismissed.