# CIRCUIT COURT OF ROANOKE COUNTY

In re Emma Kay Pruett,
to be known as
Naveah Grace Nalley

August 15, 2013

Case No. CA13000006-00

By Judge Charles N. Dorsey

The parties are before the Court on a petition for adoption and name change filed by Brian Anthony Nalley and Letitia Nalley. A hearing was conducted on August 5, 2013. For the reasons that follow, the petition is denied at this time, with leave granted to the Nalleys to amend.

## Issues

The petition filed by the Nalleys raises two issues. First, does the petition satisfy the statutory requirements for a "parental placement" adoption? Second, in the alternative, have the Nalleys presented clear and convincing evidence that parental consent is being withheld contrary to the best interests of the child? The Court answers both questions in the negative and, accordingly, denies the petition for adoption at this time.

## Analysis

The parties and counsel are familiar with the facts. The Court recounts specific facts as they become relevant in the course of this analysis.

### A. Statutory Requirements

Adoption is a creature of statute, and the procedures and prerequisites for adopting children are set forth in detail in the Code of Virginia. Proceedings for the adoption of a minor child may only be instituted by petition in an appropriate circuit court. Va. Code § 63.2-1201. A child may be placed for adoption by her birth parent if the placement is a "parental placement," Va. Code § 63.2-1200, meaning that the placement is "for

the purpose of foster care or adoption." Va. Code § 63.2-100. In this case, the statutes governing parental placement adoptions apply, as none of the other categories of adoption recognized in Virginia apply to these facts. In addition to parental placement adoptions, the Code of Virginia recognizes placements by agency or local board, as well as stepparent adoptions, close relative adoptions, and adult adoptions. See Va. Code §§ 63.2-1201 to 63.2-1229, 63.2-1241 to 63.2-1244.

The Court's analysis of a parental placement adoption begins with determining whether or not a birth parent has executed a valid consent to the adoption. Such consent is required unless an exception applies. (The exceptions, found in Va. Code §§ 63.2-1203 and 63.2-1233, are discussed below.) Under Va. Code § 63.2-1230, consent to a parental placement adoption must be executed before a juvenile and domestic relations district court if the birth parent resides in Virginia. The consent hearing must be preceded by a "home study," which makes certain findings as to the fitness of the prospective adoptive parents and their home. Va. Code § 63.2-1231. Under Va. Code § 63.2-1232, the district court cannot accept a birth parent's consent to an adoption unless the home study contains a recommendation by the agency regarding the suitability of the placement. Va. Code § 63.2-1232(A). The district court must further determine, among other things, that the consent of all parties is informed and not coerced, that an exchange of personal information between the birth parent(s) and adoptive parents has taken place, and that the birth parents have been informed of their opportunity to be represented by legal counsel. *Id.*

Once the consent hearing has taken place and the district court has accepted the consent of the birth parent(s), the adoptive parents may petition the appropriate circuit court for adoption and change of name. Va. Code § 63.2-1237 provides that the petition "shall contain a full disclosure of the circumstances under which the child came to live, and is living, in the home of the petitioner." In addition, the petition must state that the district court made the required findings under Va. Code § 63.2-1232 and provide supporting documentation. The circuit court "shall not waive . . . any of the requirements of § 63.2-1232 except as allowed pursuant to subdivision 4 of § 63.2-1233." Va. Code § 63.2-1237. Subdivision 4 of Va. Code § 63.2-1233 provides that the district court may enter an order waiving the birth parents' consent to the adoption where they have failed to appear at the consent hearing without good cause. Since that circumstance does not exist in this case, the exception does not apply, and the requirements of Va. Code § 63.2-1232 cannot be waived.

The petition in this case fails to satisfy the above-cited provisions. Neither birth parent has consented to the placement in accordance with Va. Code § 63.2-1230, which requires that consent in a parental placement adoption be executed before a juvenile and domestic relations district court. Letters written by the birth mother, even if notarized, cannot satisfy

this requirement. A signed and notarized consent remains relevant for the purposes of satisfying Va. Code § 63.2-1202(A) ("No petition for adoption shall be granted, except as hereinafter provided in this section, unless written consent to the proposed adoption is filed with the petition. Such consent shall be in writing, signed under oath, and acknowledged before an officer authorized by law to take acknowledgments."). However, compliance with that provision does not satisfy the consent. The consent hearing before the district court is more than a mere formality; the judge is required to make several critical findings as to consent and the suitability of the adoptive home under Va. Code § 63.2-1232 before accepting parental consent. Since a consent hearing has not yet been conducted in this case, the petition is not properly before this Court.

Even if the petition were properly before the Court, it is deficient in several respects. Before the Court can grant this petition, it must certify compliance with Va. Code § 63.2-1232; the Court cannot waive any of the statutory requirements in the present case. The first requirement of a parental placement adoption under the statute is a determination by the district court that the birth parents' consent is informed and not coerced. Since the birth parents have not given their consent, this requirement has not been met. Moreover, the Juvenile and Domestic Relations District Court has not made any of the required determinations under Va. Code § 63.2-1232, nor, apparently, did it have the factual basis to do so.

The home study filed with the Court raises another issue. The file is not clear how, or why, the home study in the juvenile court was ordered. As previously noted, the petition does not contain a full disclosure of such proceedings. Va. Code § 63.2-1232(A)(6) states that the home study "shall contain the agency's recommendation regarding the suitability of the placement." In this case, the home study conducted by the Department of Social Services ("DSS") disclosed that the Nalleys were generally suitable as adoptive parents. However, the agency was unable to recommend the Nalleys for placement due to a criminal assault and battery charge pending against Mr. Nalley at the time of the home study. In a letter to this Court dated July 16, 2013, DSS indicated that the this charge had been dismissed, that the Nalleys had moved in with Ms. Nalley's mother, that background checks for Ms. Nalley's mother had been submitted on July 16, 2013, but "[t]he results of these checks have not been received by the Department," and that "[t]his home was reassessed by the Department on DATE (sic) and found to be a suitable environment for children." However, DSS did not recommend the Nalleys for placement. Thus, in addition to the fact that the Juvenile and Domestic Relations District Court did not make a determination regarding the home study, the "recommendation" requirement has not been met in this case.

Because the petition does not comply with Va. Code § 63.2-1237, the Court cannot grant the petition at this time. However, the Nalleys are granted leave to amend, and the Court will retain jurisdiction over the matter.

## B. *Parental Consent and the Best Interests of the Child*

A final order has not been entered in this matter. Nevertheless, in the event that this opinion is treated as an appealable final order, for the purposes of appellate review, the Court finds, in the alternative, that the petitioners have not shown that parental consent is withheld contrary to the best interests of the child.

A circuit court may grant a petition for adoption if it finds that a required consent is withheld "contrary to the best interests of the child as set forth in § 63.2-1205, or is unobtainable." Va. Code § 63.2-1203. In addition, consent is not required in circumstances obviating the need for such consent, such as the death of both birth parents. Va. Code § 63.2-1233. In determining whether the adoption is in the best interests of the child, the court "shall consider all relevant factors" set forth in Va. Code § 63.2-1205.

Applying previous versions of Va. Code § 63.2-1205, courts have held that granting an adoption petition over the objection of a birth parent requires "clear and convincing evidence that the adoption would be in a child's best interest and that it would be detrimental to continue the natural parent-child relationship." *Frye v. Spotte*, 4 Va. App. 530, 531, 359 S.E.2d 315, 317 (1987) (citation omitted). While the statute was amended in 2006 to require consideration of the child's best interests in place of the "detrimental" inquiry, 2006 Va. Acts, ch. 825, the General Assembly did not displace the requirement of "clear and convincing" evidence found in case law. Thus, the Court cannot grant the petition absent clear and convincing evidence that consent is withheld contrary to the best interests of the child.

The Supreme Court of Virginia has consistently interpreted Va. Code § 63.2-1205 and its predecessors to balance the best interests of the child with the due process rights of the birth parents. *Copeland v. Todd*, 282 Va. 183, 194-95, 715 S.E.2d 11, 17 (2011). Those due process guarantees are enshrined in the federal Fourteenth Amendment and Article I, Section 11, of the Constitution of Virginia. The "best interests of the child" standard is therefore more demanding in the context of adoption than in other situations where that phrase is used, such as custody disputes. *Id.* at 197, 715 S.E.2d at 19. "While in both adoption and custody cases, the primary consideration is the welfare and best interest of the child, it does not necessarily follow that the natural bond between parent and child should be ignored or lightly severed. On the contrary, this bond should be accorded great weight." *Id.* (quoting *Doe v. Doe*, 222 Va. 736, 747, 284 S.E.2d 799, 805 (1981)). Likewise, the Supreme Court of the United States has held that something more than the "best interests of the child" is required to terminate parental rights, since "[t]he liberty interest at issue . . . is perhaps the oldest of the

fundamental liberty interests recognized by this Court." *Troxel v. Granville*, 530 U.S. 57, 65, 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000); see also *Quilloin v. Walcott*, 434 U.S. 246, 255, 98 S. Ct. 549, 54 L. Ed. 2d 511 (1978).

Mindful of the constitutional rights of the birth parents, the Court now turns to the mandatory factors set forth in Va. Code § 63.2-1205.

1. *"[T]he birth parents' efforts to obtain or maintain legal and physical custody of the child."*

The birth mother, Tammy, is presently unable to obtain or maintain physical custody of the child, Emma, because she is incarcerated. According to the home study, her crimes included credit card fraud, prescription fraud, forgery of public records, and larceny. According to her testimony, she was incarcerated in August of 2010 and will be released in November of 2014. However, Tammy's mother, Wanda, has filed for custody of Emma in the Juvenile and Domestic Relations District Court. Tammy desires that Wanda have custody of Emma until her release from prison in the latter part of 2014, not markedly unlike the approach the parties used for the older child, Desi. The Court finds that Tammy has undertaken efforts to obtain physical custody.

Tammy's husband, Gary, is presumed to be the birth father under Va. Code § 63.2-1233(1)(f), and no evidence has been presented to rebut the presumption. Gary has not taken steps to obtain legal or physical custody.

2. *"[W]hether the birth parents are currently willing and able to assume full custody of the child."*

Tammy is willing but unable to assume full custody of her daughter due to her incarceration. Gary appears able, though perhaps not willing; he has stated that he would like to raise his daughter, but "seemed reluctant about his ability to care for a child at this time" according to the home study. On the other hand, he was preparing a room for Emma in his home in Vinton and planned for Wanda to have custody of the child until Tammy's release. The home study also stated that Gary and Tammy planned to renew their vows and that Tammy would like to have a future with Gary and Emma as a family. The home study reported that Gary receives a monthly income of $1,106 from Social Security.

3. *"[W]hether the birth parents' efforts to assert parental rights were thwarted by other people."*

The Nalleys have thwarted the birth parents' efforts to assert their rights as parents. They have begun referring to the child as "Navea" rather than "Emma," the name given to her at birth. They have reduced the amount of time that Wanda, her biological grandmother, is able to see her. They have also stopped taking Emma to see her birth mother in jail.

4. *"[T]he birth parents' ability to care for the child."*

The birth mother is currently unable to care for Emma. There is no suggestion that the birth father could not care for Emma, though he does not seem to want to. However, there is no evidence that the birth parents could not care for her upon Tammy's release from prison.

5. *"[T]he age of the child."*

Emma was born on March 8, 2011, and is now approximately two and one half years old.

6. *"[T]he quality of any previous relationship between the birth parent(s) and the child and between the birth parents and any other minor children."*

Tammy has had a very limited relationship with Emma, since she has been in prison for the entirety of her daughter's life so far. Gary's relationship with the child has also been quite limited.

Tammy has another daughter, Desi, born on October 23, 1994. Desi is Emma's half-sister. She spent the first part of her life living with Tammy. Following Tammy's incarceration, she moved in with Tammy's mother, Wanda, who obtained legal custody of her. At that time, Wanda and the Nalleys went to the same church. When Desi stopped getting along with Wanda, she moved in with the Nalleys, with the consent of Wanda and Tammy, and while continuing to see both of them, albeit with declining frequency. Desi has now lived with the Nalleys for about five years, though the Nalleys never legally adopted her, nor had legal custody changed.

7. *"[T]he duration and suitability of the child's present custodial environment."*

Emma has lived with the Nalleys since birth. In addition to Desi and Emma, the Nalleys have two sons, aged twenty-two and fourteen. According to the home study, Desi and the Nalley boys "adore" Emma. The child appears to have adjusted well to living in the Nalley household.

A 2012 criminal history report indicated that Mr. Nalley was eligible for adoptive approval, despite the pending assault and battery charge that was later dismissed. During the home study, Mr. Nalley reported that the incident giving rise to the charge occurred in 2011. Ms. Nalley had suffered a stillbirth and miscarriages. Mr. Nalley had experienced a drastic reduction of work. Under these stresses, the couple got into a verbal argument that frightened their younger son and caused him to call the police. It was evident to the police that Mr. Nalley had grabbed Ms. Nalley's shirt. On April 30, 2013, the assault and battery charge was dismissed.

The Nalleys provide for Emma's material needs. Though they filed for bankruptcy in 2009, the home study found that their gross income of $5,150 per month was sufficient to cover their reported monthly expenses of $3,785. Emma has her own room in the house owned by Ms. Nalley's

mother, where the Nalleys currently reside. The record contains no other details regarding the Nalleys' current living situation.

Emma is by all appearances a happy, healthy child. She is insured through Medicaid, and receives regular check-ups and immunizations at Physicians to Children. The Nalleys had a good relationship with Tammy and her family until the spring of 2012, when the Nalleys filed a custody petition in the Juvenile and Domestic Relations District Court.

### 8. *"[T]he effect of a change of physical custody on the child."*

The Nalleys' household is the only home Emma has known. A change of physical custody at this time would likely have a negative impact on her welfare in the near term.

As Emma's guardian ad litem observed during the August 5 hearing, the determination of whether consent is withheld contrary to the child's best interests is a "close call" in this case. The Nalleys have given Emma a stable and loving home, to which she has adjusted well. On the other hand, the Court has insufficient information regarding the Nalleys' current living situation. In addition, the Court notes that the Nalleys never sought to adopt Tammy's older daughter, Desi. Thus, it was reasonable for the birth parents to place Emma in the custody of the Nalleys, for an appropriate period, with the expectation that Tammy and Gary would remain her legal parents.

In consideration of all of the statutory factors, the Court finds that the Nalleys have not satisfied the high standard demanded of prospective adoptive parents seeking to overcome the absence of necessary parental consent. Granting the Nalleys' adoption petition requires "more than a mere finding that the adoption would promote the child's best interests." *Copeland v. Todd*, 282 Va. 183, 197, 715 S.E.2d 11, 19 (2011) (citing *Malpass v. Morgan*, 213 Va. 393, 398-99, 192 S.E.2d 794, 798-99 (1972)). They have not made the required showing. The Court accordingly cannot grant their petition at this time.

### Conclusion

The petition before the Court does not satisfy the requirements for a parental placement adoption set forth in Va. Code § 63.2-1237, and, alternatively, fails to demonstrate that parental consent is being withheld contrary to the best interests of the child by clear and convincing evidence. The petition is accordingly denied at this time.

The Nalleys are granted leave to amend the petition at any time it remains on the docket of the court, with proper notice to all parties, should they be so advised. The matter will remain on the active docket of the Court pending further order. Wanda Chinault, the maternal grandmother, shall proceed with her custody petition in the juvenile court.

All parties' and guardians ad litem's objections are noted and preserved.