UNPUBLISHED

COURT OF APPEALS OF VIRGINIA


Present: Judges Alston, Chafin and Senior Judge Haley


LISA M. ROESSELL

v.      Record No. 0742-17-2

DAVID L. BOWLES AND
 SHERRI J. BOWLES

MEMORANDUM OPINION*
PER CURIAM
SEPTEMBER 19, 2017

FROM THE CIRCUIT COURT OF PRINCE GEORGE COUNTY
James F. D'Alton, Jr., Judge

(Jessica V. Bailey, on brief), for appellant. Appellant submitting on
brief.

(Joan M. O'Donnell; Linda M.H. Tomlin, Guardian *ad litem* for the
minor child; Old Towne Lawyers, LLP; Tomlin & McKeen, P.C., on
brief), for appellee. Appellee and Guardian *ad litem* submitting on
brief.


Lisa Roessell (mother) appeals an order of adoption. Mother argues that the trial court erred

by finding that her consent to the adoption was withheld contrary to the best interests of the child

because the trial court "arbitrarily disregarded evidence that her efforts to assert her parental rights

were thwarted by other people and that [she] and the child previously had a quality parent-child

relationship." Upon reviewing the record and briefs of the parties, we conclude that the trial

court did not err. Accordingly, we affirm the decision of the trial court.

BACKGROUND[1]

Mother and Troy Lee Brinkley (father) are the biological parents to a child born in

August 2008. In April 2015, mother and the child were living with mother's

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Pursuant to Rule 5A:8, the record contains a written statement of facts, but no transcript.

then-nineteen-year-old son, Michael, and her adopted mother, who also was her biological grandmother. Mother testified that in April 2015, she was "'forced' to leave the home and had nowhere to go," so she left the child with Michael. In May 2015, David and Sherri Bowles (the Bowleses) were asked to help Michael with the child. Mrs. Bowles helped Michael enroll the child in daycare for the summer and take the child to a pediatrician for medication. The child started to stay with the Bowleses periodically. By November 7, 2015, the child was living with the Bowleses permanently because Michael was no longer able to care for the child.

On January 7, 2016, the Prince George County Juvenile and Domestic Relations District Court (the JDR court) awarded legal and physical custody of the child to the Bowleses. The JDR court's order indicated that mother was represented by counsel and father was present in person at the hearing. Both mother and father agreed to the custody arrangement.

On March 29, 2016, mother pled guilty to two felonies. As a result, she was incarcerated from December 2015 until October 2016.

On July 5, 2016, the Bowleses filed a petition for adoption. On December 6, 2016, the trial court entered an order finding that father had not visited or contacted the child for a period of six months immediately prior to the Bowleses filing their petition for adoption. The trial court held that father's consent was not necessary pursuant to Code § 63.2-1202(H). However, there was evidence that mother attempted to speak with the child when she called Mr. Bowles on June 29, 2016. Mr. Bowles was at work at the time, and the child was not present. The trial court scheduled a hearing for January 9, 2017 to decide whether mother's consent to the adoption was being withheld contrary to the child's best interests.

On January 9, 2017, the parties appeared before the trial court for a hearing on the merits. There was conflicting evidence about whether mother had contact with the child after she left in April 2015. Mother testified that she was "in constant contact" with the child; however, her

biological mother testified that mother did not return for the child after she left. In August 2015, mother went to the child's daycare, but had no identification and was unable to see the child. Mrs. Bowles testified that mother had not attempted to contact the child except for the one phone call to Mr. Bowles on June 29, 2016. Mother testified that she had tried to call the Bowleses from jail, but her calls were unanswered.

The trial court also heard evidence about the child's condition and behavior prior to living with the Bowleses and since living with the Bowleses. Prior to the child living with the Bowleses, he had numerous absences from school and was doing poorly in school. The child was underweight and had vision and dental issues. Since living with the Bowleses, the child regularly sees a pediatrician, dentist, psychiatrist, and licensed clinical social worker. He is healthy, and the Bowleses obtained eyeglasses for him. The child receives medication for ADHD. The child regularly attends school and is doing better academically. Mrs. Bowles goes to the child's school weekly to meet with his teachers and check on the child's progress and behavior, which has improved since he started living with the Bowleses. He is now less anxious and more verbal.

The child's counselor testified that the child has bonded with the Bowleses and has told the counselor that he does not wish to see his mother. The counselor opined that contact with mother "would do irreparable harm and cause significant regression for the child."

Mother testified that she had a close relationship with her child prior to her incarceration. She stated that she met with the child's teacher and took him to a doctor. She was not aware that he had any problems with his vision. At the time of the hearing, she was not employed. She was living in a four-bedroom home with Michael and two other friends. She signed up for parenting classes, which were expected to begin on April 18, 2017. Mother explained that she did "not want to remove the child from the Bowles' care currently, but desire[d] a relationship with him

going forward." She admitted that she had not paid any support to the Bowleses since the child has been living with them.

Father also testified in support of mother. He said that mother was a "good" mother to the child and that the child had been doing well in her care.

After hearing all of the evidence, the trial court made the following findings:

> that the birth mother made no effort to obtain or maintain legal and physical custody of the child since June 2015, other than filing certain Petitions seeking custody and visitation (which are now pending in the Juvenile & Domestic Relations District Court of Prince George) after this proceeding commenced; that the birth mother is currently willing but not able to assume full custody of the child due to her lack of independent housing and stable employment; that the birth mother's efforts to assert parental rights were not thwarted by other people; that the birth mother has failed to demonstrate an ability to care for the child; that the birth mother abandoned the child before the child came to reside with the Petitioners; that the birth mother did not maintain custody of her other children throughout their minority; that the child has been continuously in the Petitioners' care since November 2015 and has improved in health, behavior and academics; and that a change in physical custody of the child may have an irreparable harmful effect on his overall development and well-being.

The trial court then held that father's consent to the adoption was not required and that mother's consent was withheld contrary to the best interests of the child. The trial court granted the Bowleses' petition for adoption, and this appeal followed.

ANALYSIS

"Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Martin v. Pittsylvania Cty. Dep't of Soc. Servs., 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986) (citations omitted).

Mother argues that the trial court erred by finding that her consent to the adoption was withheld contrary to the best interests of the child. Mother argues that the trial court disregarded

evidence that the Bowleses thwarted her efforts to assert her parental rights and that she and the child had a "high quality parent-child relationship."

"We have consistently held that to grant a petition for adoption over a birth parent's objection, there must be more than a mere finding that the adoption would promote the child's best interests." Copeland v. Todd, 282 Va. 183, 197, 715 S.E.2d 11, 19 (2011) (citing Malpass v. Morgan, 213 Va. 393, 398-99, 192 S.E.2d 794, 798-99 (1972)). "Virginia's statutory scheme for adoption, including Code §§ 63.2-1205 and -1208, defines the best interests of the child in terms that require more expansive analysis than when the contest is between two biological parents." Id. at 199, 715 S.E.2d at 20.

Code § 63.2-1205 states:

> In determining whether the valid consent of any person whose consent is required is withheld contrary to the best interests of the child, . . . the circuit court . . . shall consider whether granting the petition pending before it would be in the best interest of the child. The circuit court . . . shall consider all relevant factors, including the birth parent(s)' efforts to obtain or maintain legal and physical custody of the child; whether the birth parent(s) are currently willing and able to assume full custody of the child; whether the birth parent(s)' efforts to assert parental rights were thwarted by other people; the birth parent(s)' ability to care for the child; the age of the child; the quality of any previous relationship between the birth parent(s) and the child and between the birth parent(s) and any other minor children; the duration and suitability of the child's present custodial environment; and the effect of a change of physical custody on the child.

The Bowleses presented evidence regarding the factors in Code § 63.2-1205. Mother admitted that, at the time of the hearing, she was unable to assume custody of the child, and she did not want to remove the child from the Bowleses' care.

Mother argues that the Bowleses thwarted her efforts to see the child, yet the evidence proved that she was the one who left the child with her teenage son and did not return for the child. She made one attempt to see her child at daycare over the summer in August 2015, but was unable

to do so because she did not have any identification. The JDR custody order from January 2016 indicated that mother agreed for the Bowleses to have custody of the child. Mother did not appeal that order. Mother testified that she tried calling the Bowleses from jail, but there was no further information about how often she tried to call and whether she left messages. Although mother testified that she "continued to call and text message the Bowles but her attempts were unanswered," Mrs. Bowles testified that, aside from the one telephone call to Mr. Bowles, they had not received any communication from mother. The trial court had the opportunity to see and hear the witnesses. The trial court accepted Mrs. Bowles' testimony, since it found that mother's efforts to assert her parental rights were not thwarted by other people. "It is well established that the trier of fact ascertains a witness' credibility, determines the weight to be given to their testimony, and has the discretion to accept or reject any of the witness' testimony." Street v. Street, 25 Va. App. 380, 387, 488 S.E.2d 665, 668 (1997) (*en banc*) (citation omitted).

Mother also argues that she had a "high quality" relationship with the child prior to him living with the Bowleses. Father corroborated mother's testimony that she was a "good" mother. However, the child's counselor, the child's physical education teacher, and the child's biological grandmother all testified that the child has improved since being in the care of the Bowleses. The child's counselor testified that the child "has made significant progress." The child told the counselor that mother was "mean" and he did not want to see her. The child's physical education teacher talked about the improvement in the child's appearance and behavior since living with the Bowleses. The child's biological grandmother testified that while under mother's care, "the child had obvious vision and dental issues that [mother] did not resolve and he was perceived as unhappy;" however after living with the Bowleses, the child is "happier, healthier, and cleaner." The evidence further showed that the child has bonded well with the Bowleses and that a change in custody could cause "irreparable harm" to the child.

Based on all of the evidence, the trial court did not err in finding that mother was withholding her consent to the adoption contrary to the child's best interests.

CONCLUSION

For the foregoing reasons, the trial court's ruling is affirmed.

Affirmed.