COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Fitzpatrick, Judges Coleman and Bray
Argued at Richmond, Virginia


MARY E. JACKSON

MEMORANDUM OPINION[*] BY
v.    Record No. 0226-99-2     JUDGE SAM W. COLEMAN III
                               DECEMBER 28, 1999
RICHMOND DEPARTMENT OF SOCIAL SERVICES


             FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                      Randall G. Johnson, Judge

             (Robert W. Carll, on brief), for appellant.
             Appellant submitting on brief.

             Alexandra Silva, Assistant City Attorney;
             Robin M. Morgan, Guardian ad litem for the
             minor child (Office of the City Attorney, on
             brief), for appellee.


     Mary Jackson appeals from a decision terminating her parental

rights of her daughter, Ruth Jackson.  The issue on appeal is

whether the evidence is sufficient to meet the clear and

convincing standard required for termination of parental rights

under Code § 16.1-283(C).  We find that the evidence is sufficient

and affirm the trial court's ruling terminating Mary Jackson's

residual parental rights.

--------------------------------

     * Pursuant to Code § 17.1-413, recodifying Code
§ 17-116.010, this opinion is not designated for publication.

BACKGROUND

In January 1995, approximately a week after her birth, Ruth Jackson was removed from her parents' custody due to concerns raised by hospital personnel. Several days later, Ruth Jackson was placed back in the custody of her parents, with legal custody remaining with the Richmond Department of Social Services (DSS) until March 1995. In July 1995, Ruth was again removed from her parents' custody because of allegations that she was abused and neglected. At that time, Ruth's father, Harold Jackson, was hospitalized for a gunshot wound received during a drive-by shooting. Mary Jackson had been hospitalized several times for mental health problems, and she did not have a permanent residence. The juvenile court returned Ruth to her parents' custody, but ordered stabilization services to prevent future removals from the home.

In the ensuing months, Mary Jackson was repeatedly hospitalized for psychiatric problems and she was still unable to maintain a permanent residence. During this period, Harold and Mary Jackson would occasionally live together at friends' homes or hotels. DSS encouraged and assisted Mary Jackson in moving to Norfolk, where her mother could assist her with caring for Ruth. Mary Jackson, however, stayed in Norfolk for only six days before returning to Richmond.

On April 24, 1996, Ruth was again removed from her mother's custody based on allegations that Mary Jackson was unable to care for Ruth. In May 1996, Janet Kramer, Ruth's foster care worker, counseled Mary Jackson on various things she should do in order to regain custody of her daughter. Kramer recommended that Mary Jackson establish a stable residence, obtain full-time employment, and obtain a psychological evaluation. While living in Virginia, the Jacksons lived at twelve different locations. Despite being advised to move to Richmond where services could be provided and where the Jacksons would have access to the Richmond Mental Health facility, Harold Jackson indicated that he preferred to live in Chesterfield County. In June 1997, the couple moved to Pennsylvania. Mary Jackson did not avail herself of the referral by DSS to assist the Jacksons in obtaining housing, employment, or a psychological evaluation.

When Ruth was placed in foster care in April 1996, she was dirty, had head lice, and was withdrawn. She has been diagnosed with having Attention Deficit Hyperactivity Disorder (ADHD). Ruth is a very active child, and she is more difficult to care for than the average child. She attends a special needs school and is enrolled in an early childhood development program.

From April 1996 until June 1998, Mary Jackson had supervised visits with Ruth. Until Mary Jackson moved to Pennsylvania in June 1997, she visited Ruth at least once per month; after Mary

Jackson moved, she visited Ruth once in September 1997, once in October 1997, once in February 1998, and once in May 1998. During the visits, Ruth did not appear to bond with her mother. She would cry when Mary Jackson tried to hold her and seemed to be fearful of Mary Jackson. The Jacksons would frequently telephone Ruth at her foster parents' home to check on her and to talk with her.

Howard Rosen, Ph.D., a licensed psychologist, conducted a psychological evaluation of Mary Jackson on April 9, 1998. He diagnosed her with schizophrenia, dependent personality disorder, and a history of alcohol abuse. Dr. Rosen stated that Mary Jackson was deficient in identifying critical issues of children's feelings and presenting adequate solutions to problems. Dr. Rosen also stated that, although she exhibited some "good" parenting skills while in a controlled environment with support, her parenting skills deteriorated rapidly when the child became "fussy." Dr. Rosen predicted that if she were to care for Ruth, who had ADHD, Mary Jackson's schizophrenia would "escalate." He concluded that without substantial community supports, Mary Jackson is incapable of safely or adequately parenting a child.

ANALYSIS

"When addressing matters concerning a child, including the termination of a parent's residual parental rights, the paramount consideration of a trial court is the child's best interests."

Logan v. Fairfax County Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991). Where the trial court hears the evidence ore tenus, its decision is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it. See Lowe v. Department of Pub. Welfare, 231 Va. 277, 282, 343 S.E.2d 70, 73 (1986).

Code § 16.1-283(C)(2) provides that the parental rights of a child placed in foster care may be terminated if the court finds by clear and convincing evidence that it is in the best interests of the child and that:

> [t]he parent . . . , without good cause, [has] been unwilling or unable within a reasonable period not to exceed twelve months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end. Proof that the parent . . . without good cause, [has] failed or been unable to make substantial progress towards elimination of the conditions which led to or required continuation of the child's foster care placement in accordance with [the parent's] obligations under and within the time limits or goals set forth in a foster care plan filed with the court . . . shall constitute prima facie evidence of this condition.

"'[T]he rights of parents may not be lightly severed but are to be respected if at all consonant with the best interests of the child.'" Ward v. Faw, 219 Va. 1120, 1124, 253 S.E.2d 658,

- 5 -

661 (1979) (quoting Malpass v. Morgan, 213 Va. 393, 400, 192 S.E.2d 794, 799 (1972)).  The termination of parental rights is a grave, drastic, and irreversible action.  When a court orders termination of parental rights, the ties between the parent and child are severed forever and the parent becomes "'a legal stranger to the child.'"  Lowe, 231 Va. at 280, 343 S.E.2d at 72 (quoting Shank v. Department of Soc. Servs., 217 Va. 506, 509, 230 S.E.2d 454, 457 (1976)).

The trial court found that Mary Jackson has severe mental health problems, including schizophrenia and dependent personality disorder.  The trial court further found that she failed to follow through with treatment plans and that even assuming she did comply with the mental health care providers' treatment plans, she is unable to adequately provide for Ruth's well-being.

Despite the social services provided, Mary Jackson did not follow through with the recommendations of the social worker.  By her own admission, she suffers from schizophrenia and has been hospitalized more than twenty times.  She has been unable to consistently follow through with recommendations and treatment plans provided by mental health care providers.  In 1996, at the request of mental health personnel at one of the treatment facilities, Mary Jackson was placed in an adult home, but she fled from the home twice, stating that she needed her "freedom."  Her mental health problems contribute to her inability to successfully

parent Ruth, and it is unlikely that the problems will abate in the future given her inability to maintain a treatment program. Further, she failed to present any evidence that her mental health condition is improving.

The record indicates that Ruth Jackson is doing well in foster care where she has been since April 1996. She is being treated for ADHD and is attending a special needs school. Ruth's foster parents actively seek community services to assist her. She is receiving medical treatment for mood liability, distractibility, and impulsiveness.

Ruth was in foster care for nearly four years, while Mary Jackson was unable or unwilling to cooperate with the agencies seeking to assist her. She has not demonstrated that she is willing or able to remedy within twelve months the conditions that led to Ruth being placed in foster care or shown good cause for her failure or inability to do so. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his responsibilities." Kaywood v. Halifax County Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990).

The trial court's finding that the termination of Mary Jackson's residual parental rights was in Ruth Jackson's best interest and the court's finding that DSS presented clear and convincing evidence to meet the requirement of Code

§ 16.1-283(C)(2) was supported by the record.  Accordingly, we affirm the decision.

Affirmed.