COURT OF APPEALS OF VIRGINIA


Present: Chief Judge Fitzpatrick, Judges Coleman and Bray
Argued at Richmond, Virginia


HAROLD JACKSON

MEMORANDUM OPINION* BY
v.    Record No. 0648-99-2         JUDGE SAM W. COLEMAN III
                                     DECEMBER 28, 1999
RICHMOND DEPARTMENT OF SOCIAL SERVICES


FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Randall G. Johnson, Judge

Karen Minter Matthews (Law Offices of
Thomas O. Bondurant, Jr., on briefs), for
appellant.

Alexandra Silva, Assistant City Attorney;
Robin M. Morgan, Guardian ad litem for the
minor child (Office of the City Attorney, on
brief), for appellee.


Harold Jackson appeals from a decision terminating his

parental rights of his daughter, Ruth Jackson.  On appeal, Harold

Jackson argues that the evidence was insufficient to meet the

clear and convincing standard required for termination of parental

rights under Code § 16.1-283(C)(2).  We disagree and affirm the

trial court's ruling terminating his residual parental rights.

BACKGROUND

In January 1995, approximately a week after her birth, Ruth

Jackson was removed from her parents' custody, due to concerns

          * Pursuant to Code § 17.1-413, recodifying Code
§ 17-116.010, this opinion is not designated for publication.

raised by hospital personnel.  Several days later, Ruth was placed back in her parents' custody, with legal custody remaining with the Richmond Department of Social Services (DSS) until March 1995.  In July 1995, Ruth was removed from her parents' custody because of allegations that she was abused and neglected.  At that time, Harold Jackson was hospitalized for a gunshot wound received during a drive-by shooting.  Mary Jackson had been hospitalized several times for mental health problems.  The juvenile and domestic relations district court subsequently returned Ruth to her parents' custody, but ordered stabilization services to prevent future removals from the home.  In the ensuing months, Harold and Mary Jackson would occasionally live together at friends' homes or hotels, but occasionally, Harold Jackson would live in shelters.

On April 24, 1996, Ruth was removed from the Jacksons' custody because of allegations that Mary Jackson was unable to care for Ruth.  When Ruth was placed in foster care in April 1996, she was dirty, had head lice, and was withdrawn.  At the time, Harold Jackson was being detained on charges of raping Mary Jackson and threatening to burn down the house in which Mary and Ruth Jackson were living.

In May 1996, Janet Kramer, foster care worker for Ruth, counseled Harold Jackson on various things he should do in order to regain custody of his daughter.  Kramer recommended that he establish a stable residence, obtain full-time employment, and

obtain a psychological evaluation.  Harold Jackson had difficulty finding and keeping employment in Virginia.  While living in Virginia, the Jacksons lived at twelve different locations.  Despite being advised to move to Richmond where services could be provided and where the Jacksons would have access to the Richmond Mental Health facility, Harold Jackson indicated that he preferred to live in Chesterfield County.  In June 1997, the couple moved to Pennsylvania.

From April 1996 until June 1998, Harold Jackson had supervised visits with Ruth.  Until the Jacksons moved to Pennsylvania in June 1997, Harold Jackson visited Ruth at least once per month; however, after moving, he visited her once in September 1997, once in October 1997, once in February 1998, and once in May 1998.  The Jacksons frequently telephoned Ruth at her foster parents' home to check on her and to talk with her.

Howard Rosen, Ph.D., a licensed psychologist, conducted a psychological evaluation of Harold Jackson.  Dr. Rosen characterized Harold Jackson as demanding, aggressive, and a "rough" person, who was insecure and who had limited and impaired judgment.  Harold Jackson was previously diagnosed with bipolar disorder, but he refuses to acknowledge that he has a mental health problem.  Harold Jackson was observed with his infant son, whom he handled roughly, awkwardly, and unsafely.  Harold Jackson was diagnosed with alcohol dependence and antisocial personality disorder.

Since being placed in foster care, Ruth has been diagnosed with having Attention Deficit Hyperactivity Disorder (ADHD). She is a very active child, and is more difficult to care for than the average child. She attends a special needs school and is enrolled in an early childhood development program.

## ANALYSIS

"When addressing matters concerning a child, including the termination of a parent's residual parental rights, the paramount consideration of a trial court is the child's best interests." Logan v. Fairfax County Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991). Where the trial court hears the evidence ore tenus, its decision is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it. See Lowe v. Department of Pub. Welfare, 231 Va. 277, 282, 343 S.E.2d 70, 73 (1986).

Code § 16.1-283(C)(2) provides that the parental rights of a child placed in foster care may be terminated if the court finds by clear and convincing evidence that it is in the best interests of the child and that:

> [t]he parent . . . , without good cause,
> [has] been unwilling or unable within a
> reasonable period not to exceed twelve
> months from the date the child was placed in
> foster care to remedy substantially the
> conditions which led to or required
> continuation of the child's foster care
> placement, notwithstanding the reasonable
> and appropriate efforts of social, medical,
> mental health or other rehabilitative
> agencies to such end. Proof that the parent

> . . . without good cause, [has] failed or
> been unable to make substantial progress
> towards elimination of the conditions which
> led to or required continuation of the
> child's foster care placement in accordance
> with their obligations under and within the
> time limits or goals set forth in a foster
> care plan filed with the court . . . shall
> constitute prima facie evidence of this
> condition.

"'[T]he rights of parents may not be lightly severed but are to be respected if at all consonant with the best interests of the child.'" Ward v. Faw, 219 Va. 1120, 1124, 253 S.E.2d 658, 661 (1979) (quoting Malpass v. Morgan, 213 Va. 393, 400, 192 S.E.2d 794, 799 (1972)). The termination of parental rights is a grave, drastic, and irreversible action. When a court orders termination of parental rights, the ties between the parent and child are severed forever and the parent becomes "'a legal stranger to the child.'" Lowe, 231 Va. at 280, 343 S.E.2d at 72 (quoting Shank v. Department of Soc. Servs., 217 Va. 506, 509, 230 S.E.2d 454, 457 (1976)).

The trial court found that Harold Jackson suffers from mental health problems which are exacerbated by his refusal to recognize that he has a problem. The court noted Harold Jackson's refusal for years to obtain a mental health evaluation despite DSS's attempt to persuade him to obtain one. Moreover, the court noted that Harold Jackson was "physical" with his wife when he was unable to control her behavior. Finally, the court remarked about Harold Jackson's unwavering determination to remain with Mary

Jackson if custody of Ruth is returned to him, stating that it was not in Ruth's best interest to be "returned to that environment."

Harold Jackson, relying on Weaver v. Roanoke Department of Human Resources, 220 Va. 921, 265 S.E.2d 692 (1980), argues that DSS failed to assist him in remedying the conditions which led to Ruth's placement in foster care. In Weaver, Kenneth Weaver petitioned the court to be relieved of custody of his two children because he was financially unable to care for them. The children were placed in foster care, and during the next three years, Weaver did not financially support the children. He changed residences frequently and visited the children sporadically. The record did not contain any evidence indicating what, if any, measures were taken by rehabilitative agencies to assist Weaver in remedying his financial situation. We held that "in the absence of evidence indicating that reasonable and appropriate efforts were taken by social agencies to remedy the conditions leading to foster care, residual parental rights cannot be terminated." 220 Va. at 928-29, 265 S.E.2d at 696-97.

Here, despite the social services provided, Harold Jackson did not follow through with the recommendations of the social worker. Kramer advised Harold Jackson to obtain a psychological evaluation and scheduled an appointment in November 1996, which Harold Jackson did not keep. He finally obtained an evaluation in April 1998. Kramer advised him to apply for public housing in Richmond, but Harold Jackson chose to live in Chesterfield County

and in June 1997 relocated to Pennsylvania.  Moreover, he is unwilling to admit that he suffers from mental health problems; therefore, he has been unsuccessful in obtaining treatment.  His ability to safely parent his child is poor in view of his history of bipolar and antisocial personality disorder.  DSS's attempt to render stabilization services to assist Harold Jackson in remedying the conditions which led to Ruth's placement in foster care was thwarted by his constant moving, his relocation to Pennsylvania, and his unwillingness and inability to seek help with his mental health problems.

The record indicates that Ruth Jackson is doing well in foster care where she has been since April 1996.  She is being treated for ADHD and is attending a special needs school.  Ruth's foster parents actively seek community services to assist her.  She is receiving medical treatment for mood liability, distractibility, and impulsiveness.

Ruth was in foster care for nearly four years, while Harold Jackson was unwilling or unable to cooperate with the agencies seeking to assist him.  He has not demonstrated that he is willing or able to remedy within twelve months the conditions that led to Ruth being placed in foster care or shown good cause for his failure or inability to do so.  "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming

his responsibilities."  Kaywood v. Halifax County Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990).

The trial court's finding that the termination of Harold Jackson's residual parental rights was in the child's best interest and that DSS presented clear and convincing evidence to meet the requirement of Code § 16.1-283(C)(2) was supported by the record.  Accordingly, we affirm the decision.

Affirmed.