UNPUBLISHED

COURT OF APPEALS OF VIRGINIA


Present: Judges Beales, Russell and Senior Judge Frank


SAMUEL KEVIN BRIDGE

                                                    MEMORANDUM OPINION*
v.        Record No. 1426-17-3                          PER CURIAM
                                                    FEBRUARY 27, 2018
SAMUEL A. LAYNE AND
  CHARLOTTE N. LAYNE


              FROM THE CIRCUIT COURT OF THE CITY OF WAYNESBORO
                          Charles L. Ricketts, III, Judge

              (S. Scott Baker; Baker Law Offices, PLC, on brief), for appellant.
              Appellant submitting on brief.

              (Paul A. Dryer; W. Andrew Harding, Guardian *ad litem* for minor
              child; Franklin, Denney, Ward & Dryer, PLC; Convy & Harding,
              PLC, on brief), for appellee.  Appellee and Guardian *ad litem*
              submitting on brief.


        Samuel Kevin Bridge appeals an order terminating his parental rights to his child.  Bridge

argues that the circuit court erred by (1) "finding that [his] refusal to the consent of the adoption of

his biological child . . . was contrary to the best interests of the child pursuant to Virginia Code

Section 63.2-1205;" (2) finding that [his] consent to the adoption was not required pursuant to

Virginia Code Section 63.2-1202(H);" and (3) "terminating [his] residual parental rights . . . based

on a standard of clear and convincing evidence."  Upon reviewing the record and briefs of the

parties, we conclude that the circuit court did not err.  Accordingly, we affirm the decision of the

circuit court.


_____

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND[1]

Bridge and Kayla Fisher are the biological parents to B.,[2] born in May 2012. Bridge and Fisher were never married. Fisher also is the biological mother to two of B.'s half-siblings; A. was born in August 2009 and L. was born in April 2011.[3]

Bridge was incarcerated when B. was born. In 2012, he was convicted of two felonies – malicious wounding and use of a firearm while committing a felony. Bridge was sentenced to a total of eighteen years in prison, with eight years suspended. Bridge testified that his expected release date is July 2022. B. would be ten years old if Bridge is released in July 2022.

On January 29, 2013, Fisher asked Samuel and Charlotte Layne if they would take care of Fisher's three children, A., L., and B. Fisher explained that she was unable to care for them and feared that they would be placed in foster care. The Laynes agreed to assume physical custody of the three children. At the time, B. was eight months old and developmentally delayed.

The children have resided with the Laynes since January 29, 2013. Mrs. Layne worked with B., so she is no longer developmentally delayed. B. is a healthy child and socially well-adjusted.

In August 2013, Mrs. Layne wrote a letter to Bridge to ask him to consent to a transfer of legal custody of B. to the Laynes. She provided him with information about themselves and B. She also gave him their mailing address and phone number. Bridge responded and did not consent to the transfer of custody. From August 30, 2013 to October 2, 2014, Bridge sent seven letters to the Laynes. Bridge addressed most of the letters to B. The Laynes' address and phone number have not changed since August 2013, but they never heard anything else from Bridge after October 2014. No one from Bridge's family contacted the Laynes about B.

---

[1] Pursuant to Rule 5A:8, the record contains a written statement of facts, but no transcript.

[2] We use initials to describe the children in an attempt to better protect their privacy.

[3] Bridge is not the biological father to A. or L.

On March 24, 2014, the Augusta County Juvenile and Domestic Relations District Court awarded sole legal and physical custody of B. to the Laynes.

On August 10, 2016, the Laynes filed a petition for approval of parental placement adoption with the City of Waynesboro Juvenile and Domestic Relations District Court (the JDR court) for B.[4] Fisher provided her written consent to the adoption. The JDR court found that Bridge was withholding his consent to the adoption contrary to the best interests of B. The JDR court terminated Fisher and Bridge's parental rights to B. and awarded sole legal and physical custody of B. to the Laynes pending the final order of adoption. The JDR court entered an order reflecting its ruling on December 6, 2016. Bridge appealed to the circuit court.

On July 20, 2017, the parties appeared before the circuit court.[5] Mr. and Mrs. Layne testified about the strong family bond between B., her half-siblings, and the Laynes. Mr. and Mrs. Layne testified that they were in good health and had the financial means to support B. The Laynes confirmed that they had not had any contact with Bridge since October 2014.

The Laynes introduced into evidence a home study prepared by Friday's Child Adoption Services, Inc. (the agency). In September 2016, the agency investigated the Laynes and their home. The agency found the Laynes to be "mature and stable individuals who have a realistic plan for adopting the 3 children they have already been raising for the past 3 1/2 years." The agency recommended the Laynes as adoptive parents for B. and her half-siblings.

At the conclusion of the Laynes' case, Bridge made a motion to strike, which the trial court denied. Bridge testified that he wanted to be a part of B.'s life once he was released from prison.

---

[4] The Laynes filed petitions for adoption for all three children, and Fisher consented to the adoptions. The JDR court terminated the parental rights of Fisher and the biological fathers to A. and L. The adoptions for A. and L. were finalized prior to the final hearing in the circuit court for this matter regarding B.

[5] Bridge appeared via telephone, but his guardian *ad litem* was present in court.

He acknowledged that the Laynes have been caring for B. He further admitted that he had not contacted or tried to contact B. since October 2014. He said that his only other contact with B. was when he had a few visits with B. at the local jail between May 2012 and December 2012.

At the conclusion of all of the evidence, Bridge renewed his motion to strike, which the trial court denied. The trial court found that Bridge's consent to the adoption was not necessary since he had not had contact with B. for six months prior to the filing of the petition for approval of parental placement adoption. The trial court further held that Bridge was withholding his consent to the adoption contrary to the best interests of the child. The trial court terminated Bridge's parental rights and awarded sole legal and physical custody of B. to the Laynes pending the final order of adoption. This appeal followed.

ANALYSIS

"Because the circuit court heard evidence *ore tenus*, its factual findings are 'entitled to the same weight accorded a jury verdict[] and . . . will not be disturbed on appeal unless plainly wrong or without evidence to support' them." Geouge v. Traylor, 68 Va. App. 343, 347, 808 S.E.2d 541, 543 (2017) (quoting Bristol Dep't of Soc. Servs. v. Welch, 64 Va. App. 34, 44, 764 S.E.2d 284, 289 (2014)).

*Assignments of error #1 and #3*

Bridge argues that the trial court erred by finding that his consent was withheld contrary to the best interests of the child pursuant to Code § 63.2-1205. He also asserts that the trial court erred in terminating his parental rights.

"We have consistently held that to grant a petition for adoption over a birth parent's objection, there must be more than a mere finding that the adoption would promote the child's best interests." Copeland v. Todd, 282 Va. 183, 197, 715 S.E.2d 11, 19 (2011) (citing Malpass v. Morgan, 213 Va. 393, 398-99, 192 S.E.2d 794, 798-99 (1972)). "Virginia's statutory scheme for

- 4 -

adoption, including Code §§ 63.2-1205 and -1208, defines the best interests of the child in terms that require more expansive analysis than when the contest is between two biological parents." Id. at 199, 715 S.E.2d at 20.

Code § 63.2-1205 states:

> In determining whether the valid consent of any person whose consent is required is withheld contrary to the best interests of the child, . . . the circuit court . . . shall consider whether granting the petition pending before it would be in the best interest of the child. The circuit court . . . shall consider all relevant factors, including the birth parent(s)' efforts to obtain or maintain legal and physical custody of the child; whether the birth parent(s) are currently willing and able to assume full custody of the child; whether the birth parent(s)' efforts to assert parental rights were thwarted by other people; the birth parent(s)' ability to care for the child; the age of the child; the quality of any previous relationship between the birth parent(s) and the child and between the birth parent(s) and any other minor children; the duration and suitability of the child's present custodial environment; and the effect of a change of physical custody on the child.

The Laynes presented evidence regarding the factors in Code § 63.2-1205. Neither Bridge, nor any of his family members, had filed any petitions for custody or visitation with the child. Bridge was unable to assume custody or take care of the child, since he was incarcerated until at least July 2022. He had not made any effort to obtain custody or visitation with the child, and there was no evidence that the Laynes, or anyone else, thwarted his efforts to establish a relationship with the child. The trial court found that Bridge had no relationship with the child. He last saw the child in December 2012. He wrote a total of seven letters to B. and the Laynes between August 30, 2013 and October 2, 2014. Neither Bridge nor his extended family contacted the Laynes regarding B. after October 2014, even though the Laynes' contact information had not changed. The Laynes had not received any financial support from Bridge or Fisher after Fisher placed B. and her half-siblings in the Laynes' care in January 2013. The Laynes are the only parents that B. knows because she has been living with them since she was eight months old. The trial court heard evidence that B. has a

close bond with the Laynes and her half-siblings, whom the Laynes already adopted. Mr. Layne testified that he considered B. to be his daughter "in all respects except for the legal status that an adoption would provide to their relationship." The Laynes presented evidence that they were in good health and had the financial means to support B. Unlike Bridge, neither Mr. Layne nor Mrs. Layne has a criminal history. The trial court concluded that B. was "in a loving and caring environment . . . and that continued placement with the Laynes and adoption by the Laynes was in the child's best interest." Considering all of these factors, the trial court did not err in finding that the adoption of the child by the Laynes was in B.'s best interests and that Bridge was withholding his consent contrary to the child's best interests.

The Laynes met their burden of proof. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Fauquier Cty. Dep't of Soc. Servs. v. Ridgeway, 59 Va. App. 185, 192, 717 S.E.2d 811, 815 (2011) (quoting Kaywood v. Halifax Cty. Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990)). Based on the totality of the evidence, the trial court did not err in holding that termination of Bridge's parental rights was in the best interests of the child.

"When, as here, the circuit court reviewed the statutory factors, based its findings on evidence presented, and did not commit legal error, there is no basis for this Court to reverse its decision." Geouge, 68 Va. App. at 372, 808 S.E.2d at 555.

*Assignment of error #2*

The trial court decided this case pursuant to Code §§ 63.2-1205 and 63.2-1202(H). For his second assignment of error, Bridge argues that the trial court erred in finding that his consent to the adoption was not necessary pursuant to Code § 63.2-1202(H).

"When a trial court's judgment is made on alternative grounds, we need only consider whether any one of the alternatives is sufficient to sustain the judgment of the trial court, and if so, we need not address the other grounds." Kilby v. Culpeper Cty. Dep't of Soc. Servs., 55 Va. App. 106, 108 n.1, 684 S.E.2d 219, 220 n.1 (2009); see also Fields v. Dinwiddie Cty. Dep't of Soc. Servs., 46 Va. App. 1, 8, 614 S.E.2d 656, 659 (2005) (the Court affirmed termination of parental rights under one subsection of Code § 16.1-283 and did not need to address termination of parental rights pursuant to another subsection). Since the trial court held that Bridge's consent was withheld contrary to the best interests of the child pursuant to Code § 63.2-1205, we need not decide whether the trial court erred in finding that Bridge's consent to the adoption was not necessary pursuant to Code § 63.2-1202(H).

CONCLUSION

For the foregoing reasons, the circuit court's ruling is affirmed.

Affirmed.