COURT OF APPEALS OF VIRGINIA


Present:  Judges Willis, Bumgardner and Frank
Argued at Alexandria, Virginia


CHRISTOPHER S. FAYETTE, SR.
                                    MEMORANDUM OPINION* BY
v.    Record No. 1424-99-4          JUDGE ROBERT P. FRANK
                                       AUGUST 15, 2000
STAFFORD COUNTY DEPARTMENT
 OF SOCIAL SERVICES


          FROM THE CIRCUIT COURT OF STAFFORD COUNTY
                  James W. Haley, Jr., Judge

          Cynthia L. Law (Louis S. Nuzzo; John L.
          Mahoney; Hunzeker & Lyon, on brief), for
          appellant.

          Hugh P. Fisher, III, Deputy County Attorney
          (Office of the County Attorney, on brief),
          for appellee.


     Christopher S. Fayette, Sr. (appellant) appeals the decision

of the trial court terminating his parental rights to his son,

Christopher S. Fayette, Jr.  Appellant contends the trial judge

erred in finding that:  (1) there was clear and convincing

evidence that all appropriate and reasonable efforts were taken by

the social agencies to aid appellant in remedying the conditions

leading to the child's foster care placement, (2) there was clear

and convincing evidence that appellant's failure to maintain

continuing contact with and to provide or substantially plan for

─────────────────────

     * Pursuant to Code § 17.1-413, recodifying Code
§ 17-116.010, this opinion is not designated for publication.

the future of the child for a period of six months was without good cause, and (3) there was clear and convincing evidence that appellant's failure or inability to make substantial progress towards the elimination of the conditions that led to or required the continuation of Christopher's foster care was without good cause. We disagree and, therefore, affirm the trial court's judgment.

## I. BACKGROUND

Christopher S. Fayette, Jr. (Christopher) was born to Stacy Walker (Walker) and appellant on September 27, 1992. On October 26, 1992, the Richmond County Juvenile and Domestic Relations District Court granted Walker and appellant joint custody of Christopher, placing primary residence with Walker. By April 1993, Christopher lived with Walker in Stafford County, and appellant lived in Richmond County. On May 7, 1993, appellant telephoned the Stafford County Department of Social Services (Department) to express his concern about Walker's mistreatment of Christopher. Appellant never indicated a desire to visit Christopher or seek his custody during this conversation.

On August 11, 1994, the Stafford County Juvenile and Domestic Relations District Court (juvenile court) transferred legal custody of Christopher to the Department through entry of an emergency removal order and directed that Christopher be placed in foster care. Christopher has been in foster care since the entry of the emergency removal order.

-

A foster care worker for the Department, Elizabeth Crouch (Crouch), attempted to contact appellant by phone on August 16, 1994, but the phone number had been disconnected. Crouch then contacted Walker to inquire about appellant's whereabouts, but Walker would only say appellant's last known address was in Tappahannock. Finally, the Department searched its computer records to identify an address or phone number for appellant, but the search proved unsuccessful.

Then, Crouch prepared a series of foster care service plans for Christopher. The first two plans had a goal of returning Christopher to live with his mother, but she failed to adhere to the requirements of the plan. Crouch then filed a plan on August 11, 1996, and its goal was for Christopher to be adopted.

On December 18, 1996, appellant came to the Department to speak with Crouch about Christopher, whom appellant had not seen since Christopher was six or seven months old. He brought with him an Administrative Support Order concerning Christopher's child support. The order was dated April 19, 1996, and listed Christopher's custodial parent's address as "Stafford CO Government Center 1300 Courthouse Rd PO Box 7 Stafford VA 22555 0007." The order clearly indicated that the county, not Walker, had custody of Christopher.

Appellant's reappearance prompted Crouch to make arrangements to facilitate the development of a relationship between Christopher and his father. The first step in this

-

process was for appellant to undergo an evaluation by a licensed, professional counselor, Dr. Susan D. Rosebro (Rosebro). This evaluation was scheduled to begin on January 16, 1997, but appellant did not attend.

Appellant next came to the Department on June 3, 1997, to enter into a permanent entrustment, which would terminate his parental rights to Christopher. Jane Namiot, the Department's supervisor of foster care workers, refused to execute the agreement during the visit because appellant was agitated and did not appear prepared to surrender his parental rights.

On November 3, 1997, the juvenile court terminated Walker's parental rights to Christopher, but refused to terminate appellant's parental rights. The juvenile court further instructed the Department to develop a new foster care service plan with a goal of reuniting Christopher with appellant. This plan was dated January 5, 1998.

Compliance with the new plan by appellant was minimal. The plan outlined weekly visits between appellant and Christopher, but appellant only attended sixteen of the fifty-six potential visits. Additionally, no visits occurred between February 18, 1998 and September 2, 1998. The plan required appellant to undergo a Parenting Evaluation by Rosebro, paid for by the Department, but he never completed the evaluation. The plan prescribed parenting classes through the local Department of

-

Social Services where appellant resided, but he never attended any of the classes.

Appellant never signed a release to allow the Department to undertake the required criminal records and child protective services checks. Appellant testified he was convicted of assault and battery against Walker in December 1993, attempted second degree robbery in 1986, and uttering in 1979.

Further, appellant did not allow Department workers to make home visits as outlined in the plan. He did not attend required group sessions on domestic violence. While he did attend the required substance abuse evaluation, he did not follow through on the evaluation's recommendations for treatment. He arrived intoxicated for an alcohol screening performed by substance abuse counselor Deborah Suggs. Appellant incurred $19,588.35 in child support arrearages for Christopher. His child support payments have been current since May 1998 as the result of a garnishment on his wages. Finally, appellant did not remain in contact with the Department or provide the Department with a reliable phone number and address.

The lack of success with the foster care service plan prompted the Department to file a new plan on December 14, 1998. The goal of the plan was for the adoption of Christopher, rather than placing him with his father. On December 15, 1998, the Department filed a petition to have appellant's residual parental rights to Christopher terminated.

-

On March 3, 1999, the juvenile court approved the new foster care service plan and terminated appellant's residual parental rights on March 4, 1999.  Appellant appealed, and on June 7, 1999, the trial court approved the foster care service plan with a goal of adoption and terminated appellant's residual parental rights.

## II.  ANALYSIS

> Under familiar principles we view [the] evidence and all reasonable inferences in the light most favorable to the prevailing party below.  Where, as here, the court hears the evidence ore tenus, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it.

Martin v. Pittsylvania County Department of Social Services, 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986) (citation omitted).

"When addressing matters concerning a child, including the termination of a parent's residual parental rights, the paramount consideration of a trial court is the child's best interests."  Logan v. Fairfax County Department of Human Development, 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991) (citations omitted).  "'[T]he rights of parents may not be lightly severed but are to be respected if at all consonant with the best interests of the child.'"  Ward v. Faw, 219 Va. 1120, 1124, 253 S.E.2d 658, 661 (1979) (quoting Malpass v. Morgan, 213 Va. 393, 400, 192 S.E.2d 794, 799 (1972)).  "Code § 16.1-283 embodies '[t]he statutory scheme for the . . . termination of

-

residual parental rights in this Commonwealth.'  This 'scheme provides detailed procedures designed to protect the rights of the parents and their child,' balancing their interests while seeking to preserve the family."  Lecky v. Reed, 20 Va. App. 306, 311, 456 S.E.2d 538, 540 (1995) (citations omitted).

Appellant argues the trial judge erred in finding that the Department made appropriate and reasonable efforts to assist him in following the foster care service plan.  "'Reasonable and appropriate' efforts can only be judged with reference to the circumstances of a particular case.  Thus, a court must determine what constitutes reasonable and appropriate efforts given the facts before the court."  Ferguson v. Stafford County Department of Social Services, 14 Va. App. 333, 338-39, 417 S.E.2d 1, 4 (1992).  "The law does not require the division to force its services upon an unwilling or disinterested parent." Barkey v. Commonwealth, 2 Va. App. 662, 670, 347 S.E.2d 188, 192 (1986) (citation omitted).

Appellant contends the Department provided no assistance in overcoming the biggest hurdle he faced in following the foster care service plan--his lack of affordable transportation.  This lack of transportation began with appellant's 1993 conviction for driving under the influence.  The conviction resulted in $800 in fines, which remain unpaid.  Nonpayment of these fines resulted in the continued suspension of appellant's operator's license.  Without question, appellant was aware of this handicap

-

when he agreed to the foster care service plan.  Without an operator's license and with no public transportation available, he initially relied on securing rides from friends for the visitations, which took place approximately 50 miles away.  The Department also provided appellant with information on available taxi service, but appellant deemed the two dollar per mile charge for the taxi to be too expensive.  Appellant's failure to pay the $800 in fines necessary to recover his license and his willingness to agree to a foster care service plan that required significant travel on his part created his transportation difficulties.  Having created the transportation problem, appellant now cannot fault the Department for not providing enough assistance in overcoming this obstacle.

Appellant argues he had no money to pay the fines necessary to restore his driver's license.  Yet, he testified that he has worked regularly at H. Warshaw and Sons since March 30, 1998.  Prior to that time, he worked at Wal-Mart.  The trial judge described appellant's transportation difficulties:

> Well, sir, you could have gotten your
> driver's license anytime.  You haven't had
> one since 1994 [1993]; it's been five years,
> and you couldn't get together eight hundred
> dollars you said, apparently, to pay - to
> pay off your fines and costs.  But you could
> agree to pay a hundred and fifty dollars a
> week to live in a motel a week, spend money
> on alcohol certainly, spend money on
> fishing.  But what you did willfully refuse
> and the other things you didn't do, it
> wasn't worth eight hundred bucks to come up
> and see your son is what it boils down to.

-

> You wanted to spend that money on other
> things, because you, yourself, said
> transportation was a problem.

Appellant also contends the Department exacerbated his transportation problems by keeping Christopher in a foster home approximately an hour away from appellant's residence. The trial testimony indicated that Christoper is happy with his foster family and he considers them to be his parents. Removing Christopher from this family and creating yet another upheaval in his life would not have been in the child's best interests. Therefore, the Department's failure to relocate Christopher closer to appellant was not inappropriate or unreasonable.

It is also important to note that appellant failed to satisfy the one aspect of the foster care service plan that did not require transportation to another locality. He never attended a single parenting class despite the Department's amendment to the foster care service plan, which allowed him to attend the classes in the locality of his residence.

Appellant argues the trial judge erred in finding there was clear and convincing evidence that appellant's failure to maintain continuing contact with and to provide or substantially plan for the future of Christopher for a period of six months was without good cause. Appellant attributes his failure to follow the foster care service plan to the Department's failure to make reasonable and appropriate efforts in resolving his transportation problems. He argues the lack of transportation

-

and phone service constitute good cause for failure to remain in contact with his child for the six-month period.  As discussed above, Fayette's transportation difficulties resulted from his own actions, not those of others.  Appellant's lack of phone service also was self-created.  Appellant was employed on a fairly regular basis and should have been able to afford the cost of using a pay phone or installing phone service for the purpose of calling his son.  As noted above, the trial court specifically found that appellant chose to use his money for other priorities, which did not include contacting his son.

The conclusions of the fact finder on issues of witness credibility "may only be disturbed on appeal if this Court finds that [the witness'] testimony was 'inherently incredible, or so contrary to human experience as to render it unworthy of belief.'"  Robertson v. Commonwealth, 12 Va. App. 854, 858, 406 S.E.2d 417, 419 (1991) (quoting Fisher v. Commonwealth, 228 Va. 296, 299-300, 321 S.E.2d 202, 204 (1984)).  In all other cases, we must defer to the conclusions of "the fact finder[,] who has the opportunity of seeing and hearing the witnesses."  Schneider v. Commonwealth, 230 Va. 379, 382, 337 S.E.2d 735, 737 (1985) (citations omitted).

Appellant also argues the foster care service plan is inherently unfair.  Not only does the evidence strongly suggest the service plan is not inherently unfair, but appellant entered into the agreement willingly.  Thus, there is clear and

-

convincing evidence that appellant's six-month hiatus from adhering to the requirements of the foster care service plan was without good cause.

Appellant further argues the trial court erred in finding there was clear and convincing evidence that his failure to make substantial progress towards the elimination of the conditions that led to or required the continuation of Christopher's foster care was without good cause. Appellant again cites the Department's failure to assist him with his transportation and telephone problems as good cause for his failure to make significant progress towards the elimination of the conditions that necessitated the continued foster care. The evidence, as discussed above, establishes that appellant was at fault for his difficulties, not the Department.

Appellant also cites the Department's failure to notify him of Christopher's placement at an earlier date as a reason for his failings. The latest appellant could have become aware of Christopher's placement was December 18, 1996, when he spoke with Crouch. At the December 18, 1996 appointment, appellant had the Administrative Child Support Order that listed the address of Christopher's custodial parent as the Department. The Department previously made repeated attempts to contact appellant by calling his phone number, by contacting Walker, and by conducting a computer search. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting

-

to find out when, or even if, a parent will be capable of resuming his responsibilities." Kaywood v. Halifax County Department of Social Services, 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990). The Department could not afford further delay in placing Christopher with an adoptive family, while it waited for appellant to reappear and declare an interest in his son. The Department's inability to locate appellant earlier cannot be considered good cause for appellant's inability to correct the conditions that led to Christopher's continued foster care.

Therefore, the evidence in the record fully supports the finding of the trial court that the Department presented clear and convincing evidence to terminate appellant's residual parental rights to Christopher.

Accordingly, the decision of the trial judge is affirmed.

Affirmed.

-